Paul J. Widlitz, J.
This is an appeal from a judgment of conviction in the Police Justice Court of the Incorporated Village of Garden City for a violation of ordinance 2.1A of the village ordinances (exceeding speed limit of 30 miles per hour).
The defendant, driving his automobile in an easterly direction on Old Country Road, Garden City, at about 7:20 p.m. on August 6,1957, crossed two hoses connected to a “ speed-watch ” device, and, since the device indicated a reading of 39 miles per hour, he was given a summons for speeding.
The “ speed-watch ” is a device consisting primarily of two air hoses and a control box which is attended by a police officer. The hoses are laid on the roadway .perpendicular to the direction of traffic and are set either 66 feet or 132 feet apart depending upon the particular model of the machine being used. A mercury switch is connected to each of the hoses which, in turn, are connected by an electrical wire to the control box. Within the control box are located a third mercury switch, a stop watch and a scale which translates feet per second into miles per hour.
*947 The first hose is activated by flipping over a switch on the control box which is located 300 feet or so further down the road from the hoses. When a vehicle approaches which the police officer estimates to be exceeding the prescribed speed limit, he throws the switch prior to the time that the wheels of the vehicle cross the first hose. As the wheels cross the hose, air is forced out of the hose activating the mercury switch attached thereto and the electrical impulse created thereby commences the operation of a stop watch on the control box. The officer then throws the same switch in the opposite direction thereby activating the second hose. As the wheels of the vehicle strike the second air hose, a second electrical impulse stops the stop watch on the control box. The scale on the machine, calibrated to translate seconds into miles per hour, indicates the average speed of the vehicle as it passed through the 66- or 132-foot distance.
Testimony elicited at the trial indicates that the police officer who operated the “ speed-watch ” device on the day of alleged violation had been trained in its operation and had operated the device on 30 or 40 different occasions. In addition, the officer, having qualified as an expert, gave as his opinion that the speed of defendant’s vehicle prior to its reaching the first hose was in excess of 40 miles per hour and that the defendant slowed down just as he came to the first hose. He stated that the defendant’s car was under constant observation by him from a distance of 300 to 400 feet west of the air hoses.
The next witness was the police officer who had been operating the device prior to being relieved by the first witness. He testified that he had set out the machine and had participated in a test of the accuracy of the machine. That test consisted of driving a police car across the hoses about two hours prior to the defendant’s passing over them. The reading on the police car speedometer was compared with the reading on the “speed-watch” mechanism. Witnesses were introduced who testified to another test conducted at 8:45 p.m. on the same day. On each of the tests the “ speed-watch ” device and police car’s speedometer recorded the same speed. A witness who had been present when the accuracy of the speedometers of both police cars used on the two tests had been tested, by means of a dynometer, testified that the speedometers were accurate.
A third witness, qualified as an expert of electronic speed devices and of radar equipment, testified that, in his opinion, having heard the testimony of the police officers and having inspected the device used in the case at hand, that the machine gave an accurate reading of the defendant’s speed on the day in question.
*948 There was no opening statement by the prosecuting attorney. The first point raised by the appellant herein is that in a non-jury case it is mandatory that the prosecutor make an opening statement. He cites section 388 of the Code of Criminal Procedure and People v. Sperbeck (5 Misc 2d 849) for his contention. Section 388 by its very terms is applicable only to trials by jury. We disagree with the Sperbeclc decision. The cases cited therein, as well as all the cases cited by the appellant on the first point, are cases wherein trial was by jury. No opening statement is necessary in a non jury trial.
The defendant’s second point is that testimony relative to the accuracy of the ‘6 speed-watch ’ ’ device should have been excluded. The use of the electrical ‘ ‘ speed-watch ’ ’ device was accepted and approved by this court in its decision in People v. Asheroff (N. Y. L. J., Dec. 22, 1955, p. 9, col. 3), which, likewise, involved an appeal from a conviction in the Police Justice Court of Carden City.
Expert testimony as to the scientific principles underlying the “ speed-watch ” device is no longer necessary. We are in the beginning of an era of electronics. That which was experimental a decade ago is now commonplace. The Court of Appeals, in its recent decision in People v. Magri (3 N Y 2d 562) upheld the reliability of radar as a speed detection device. It was stated therein: “Almost daily, reproductions by photography (once questioned, see Cowley v. People, 83 N. Y. 464 [1881]), X rays, electroencephalograms, electro-cardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them. The use of radar for speed detection may now be said to fall in this category.” (P. 566.) The police officer in the case before us who operated the “ speed-watch ’ ’ and who gave the defendant a summons testified as to his opinion of the defendant’s speed. The evidence, when coupled with the evidence obtained on the ‘ ‘ speed-watch ’ ’, is sufficient to sustain a conviction for speeding (People v. Magri, supra; People v. Heyser, 2 N Y 2d 390).
In light of the foregoing it is unnecessary to consider appellant’s contention that the hypothetical question asked of the electronics expert was improper. The guilt of the defendant was proved beyond a reasonable doubt and therefore the judgment of conviction is affirmed.
Submit order.