William H. Johnson, Jr., J.
Defendant was tried before this court without a jury on November 3, 1960, on a charge of violation of the city speeding ordinance (City of Binghamton Traffic Code, § 11). Defendant is alleged to have operated his motor vehicle in an easterly direction on Prospect Street in the City of Binghamton at a rate of speed of 44 miles per hour, the limit being 30 miles per hour.
At the close of the People’s case, defendant’s counsel moved for dismissal of the information and offered no proof on defendant’s behalf. Decision on the motion was reserved and the case adjourned to November 10,1960.
The proof on behalf of the People consisted of the testimony of three police officers. The arresting officer, Patrolman Lisi, operated a “ Speed Watch ” at the time in question, on which he obtained a reading of 44 miles per hour. The speed watch is a timing device manufactured by Traffic House Incorporated, *414 and designated as a model 22. As testified by officers Lisi and Dehlman, the machine is set up with two rubber tubes extending across the travelled portion of the highway, parallel to each other and 22 feet apart. This distance is measured at the time the device is placed in operation and a chalk mark is made on the pavement to enable the officers periodically to determine whether the tubes have been moved. The two parallel tubes are connected to another tube which extends 150 feet from the nearest tube to the timing box, which bears a clock-like dial, a toggle switch and a re-set button. The timing device, essentially a stop watch, is activated when a motor vehicle crosses the first tube and is shut off when the vehicle touches the second tube, whereupon the operator obtains a reading showing both the elapsed time required by the vehicle to travel the 22 feet between the tubes, and also a reading of the speed at which the intervening space was traversed.
No proof by way of expert testimony was offered as to the accuracy of this device but, rather, the device was first tested against the calibrated speedometer of a police patrol ear, driven by Patrolman Dehlman, before it was used to check the speeds of passing cars. The proof demonstrates that at approximately 3:30 p.m. when the machine was set up, Patrolman Dehlman drove the police car over the tubes at speeds of 30, 40 and 50 miles per hour respectively, according to the car’s speedometer. Patrolman Lisi would call out the speed reading which he obtained from the speed watch, to which Patrolman Dahlman replied in each instance, ‘ ‘ Check ’ ’.
Sergeant Charno testified that a short time prior to the day of the arrest, the speedometer of the patrol car involved was calibrated and found to be two miles per hour slow at 30 miles per hour and four miles per hour slow at 50 miles per hour. These discrepancies were not accounted for in any way in the testimony of Patrolmen Lisi and Dehlman. There was no testimony that any check of the machine’s accuracy was made after defendant’s arrest, which occurred at approximately 5:45 p.m.
Defendant’s counsel urges that there is no proof of the arresting officer’s qualifications to operate the speed watch, and that the testing of the device was inaccurate and incomplete, among other objections. The two mentioned grounds are the only ones which, in the opinion of this court, have merit and deserve consideration.
In the absence of scientific proof of the accuracy of the instrument itself, testimony that the machine was checked against a calibrated speedometer, under conditions assuring the accuracy of such a test, is a sufficient basis for the introduction of a read *415 ing of such device in evidence. (People v. Duskin, 11 Misc 2d 945.) However, it would appear that the check made in this particular case was not of a sufficient degree of accuracy to serve as the basis of a conviction for speeding under the circumstances here presented. No allowance for the admitted inaccuracy of the patrol car’s speedometer was made. In other words, in order to be accurate, the officer operating the speed watch should have obtained a reading of 28 miles per hour when the patrol car passed through the “ field ” when its speedometer read 30 miles per hour. Likewise, it should have read 46 miles per hour when the officer drove through the ‘ ‘ field ” at 50 miles per hour according to his speedometer. Furthermore, the machine had been in operation some two hours and fifteen minutes at the time defendant was arrested. It would seem the better practice, after such a period of operation, to test the machine before dismantling it and discontinuing its operation at that particular location. In this way, the machine’s accuracy throughout the period of operation would tend to be established.
It is also true that there was no evidence offered of Patrolman List’s qualification to operate the speed watch. As a minimal requirement, testimony should have been offered to show his training and experience in the operation of the device as a foundation for his testimony on its reading.
Because of the serious consequences to the defendant in a speeding case, placing his operator’s license in jeopardy, it is the opinion of this court that the proof in this case is not technically sufficient to sustain a conviction for speeding and the information is accordingly dismissed and the defendant discharged.